1
2
3
4
5
6

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

7
8

Teresa Lynnette Rodriguez,
Plaintiff
-vs-

CV-23-8567-PCT-DWL-JFM

9

Commissioner of Social Security
Administration, et al.,

10

Defendants.

**Report & Recommendation**

11
12

Plaintiff seeks review under 42 U.S.C. § 405(g) of the final decision of the

13

Commissioner of Social Security who denied her disability insurance benefits and

14

supplemental security income benefits under the Social Security Act.

15

This matter is now ripe for consideration.  Accordingly, the undersigned makes the

16

following proposed findings of fact, report, and recommendation pursuant to Rule 72(b),

17

Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(10), Local Rules

18

of Civil Procedure.

19

**A.  SUMMARY OF THE CASE**

20

Plaintiff filed an application for disability benefits, asserting that she became

21

disabled as of December 1, 2013, when she was 42 years old (AR 231).  She subsequently

22

amended her claim to a closed period of benefits from an onset date of January 1, 2013

23

through January 1, 2017. (AR 1491 (Exh. 35E); AR 1124 (ALJ Dec. 7/14/22).) [1]  Plaintiff

24

has past relevant work as a chiropractic assistant.

25

After a judicial appeal and remand, in a decision issued July 11, 2022, the ALJ

26
27

[1] The Administrative Record (Doc. __) is referenced herein as "AR", and the labelled
Exhibits included in the Administrative Record are referenced herein as "Ex. ___."  The

28

briefs are referenced herein as OBr. (Opening Brief, Doc. ___), ABr. (Answering Brief,
Doc. __), and RBr. (Reply Brief, Doc. ___).

- 1 -

found Plaintiff generally eligible for benefits given her date last insured, and non-employment.  The ALJ found Plaintiff had the following **severe impairments** "through January 1, 2017": "psoriatic arthritis, psoriasis, psoriatic arthropathy, myalgia and myositis, dysesthesias, bilateral carpal tunnel syndrome, cervical degenerative disc disease, spondylosis, migraine headaches, type II diabetes mellitus, and obesity."  (AR 1129.)  The ALJ also found the following **non-severe physical impairments** of "hyperlipidemia, hypertension, allergic rhinitis, and reflux esophagitis" and non-severe mental impairments of "depression and anxiety."  (*Id.* at 1129-1133)  The ALJ found no combination of impairments that established disability under the **listings**.  (*Id.* at 1133-1136.)  The ALJ found Plaintiff had the **residual functional capacity** to perform light work with the following limitations:

> she can have frequently climbed ramps and stairs, but should never have climbed ladders, ropes, or scaffolds. She could have frequently stooped and crouched, and occasionally knelt, but could have never crawled. The claimant was able to reach overhead, handle, and finger frequently. She had to work in an environment where she only had frequent concentrated exposure to extreme temperatures, humidity, vibration, wetness, chemicals, and hazards, including moving machinery and unprotected heights.

(*Id.* at 1136.)

In reaching this conclusion the ALJ found Plaintiff's subjective symptoms complaints lacked credibility, and gave "limited weight" or "some weight" to the disabling opinions of Plaintiff's treating dermatologist.  In contrast, the ALJ gave:

- "great weight" to the agency's consulting examiner (**Dr. Cano** - no disabling condition for 12 months);

- "more weight" to the opinions of the state agency consulting providers (**Dr. Disney** – light duty with limitations; and **Dr. Schenk** – light duty with limitations), but adopting greater limitations;

- "more weight" to the interrogatory response opinions from a consulting provider (**Dr. Silverman** – light duty or greater), but with lesser restrictions;

- "more weight" to the interrogatory response opinions from a consulting

provider (**Dr. Mitchell** - light duty or greater), but with lesser restrictions.  (AR 1141-1144.)[2]

Plaintiff argues the ALJ erred in: (1) giving only partial weight to the disability opinion of her treating dermatologist (Dr. Bellow) without  providing specific legitimate reasons supported by substantial evidence; and (2) rejecting Plaintiff's symptoms testimony without specific, clear and convincing reasons.  Plaintiff seeks a reversal and remand for award of benefits.

**B.  STANDARDS OF REVIEW**

**Reviewed Decision** - In this instance, because the Appeals Council denied review, the ALJ's decision is the final decision of the agency, and the decision now under review. 20 C.F.R. § 404.981.

**Bases for Reversal** - The court may set aside the agency's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla.   It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

**Limited to ALJ's Reasoning** - In reviewing the ALJ's decision, neither the parties nor the Court can manufacture their own reasons to support the decision made by the ALJ. "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The

---

[2] The ALJ also assigned "little weight" to the statements of Plaintiff's husband as lay opinions based on casual observation and subject to bias. (AR 1143.)

grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.  It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

But in identifying the ALJ's reasons, the Court is not constrained solely by the ALJ's organization of her  opinion, and can make reasonable inferences reading the decision as a whole.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**<u>Not Limited to ALJ's Record Citations</u>** – The ALJ is not mandated to provide record citations, but rather to provide reasons.  So long as the purported "*facts*" underlying those reasons find support in the record, the ALJ's decision must be sustained.  "Thus, it is clear that both this court and the district court may look to any evidence in the record regardless of whether it has been cited by the [ALJ]." *Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  *See also* 4 Soc. Sec. Law & Prac. § 55:67 (2022). Indeed, the reviewing court may reverse "only if the ALJ's decision was not supported by substantial evidence *in the record as a whole*." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (emphasis added).

On the other hand, "[t]hough the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  *See also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the *reasons* the ALJ asserts.  It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." (emphasis added)).  Thus, a decision supported only by a bare reference to "the record" would justify remand, even if

some portion of the record might support the decision, if the decision did not otherwise make clear the ALJ's reasons.

## C.  TREATING PHYSICIAN OPINION
### 1.  Factual Background

Although Plaintiff asserted disability due to a variety of impairments ("disability due to psoriatic arthritis, migraines, back pain, leg pain, joint pain, skin pain, diabetes, fatigue, depression, and anxiety" (AR 1137)), Plaintiff asserted at the most recent hearing that her inability to work stemmed from her psoriatic lesions:

> Q What impairments do you have that you feel keep you from working?
> A …I have an autoimmune disease. It's psoriatic arthritis. And I get lesions all over my body and a lot of them are on my hands, just from doing regular work as far as just doing home -- like dishes.

(AR 1161.)[3]

Plaintiff's treating dermatologist physician, Dr. Bellew, opined on **February 2, 2016** that Plaintiff was "unable to attend work on a regular basis which has resulted in missed days at work" due to the severity of her skin disorder.  (AR 1070 (Exh. 23F at 1); AR 1141.) The ALJ afforded "little weight" to Dr. Bellew's February 2016 opinions ("unable to attend work regularly") for two reasons:

(1) the limited clinical findings in the relevant period:

> Dr. Bellew's records show only one occasion when the claimant was noted to have lesions covering 60% of her body, and this was associated with starting a new medication (Exhibit 23F at 4). The rest of Dr. Bellew's notes pre-date the alleged closed period and occurred when the claimant was working (Exhibits 7F and 23F).

(AR 1141.)

(2) the transient nature of the findings:

> Given that the number of lesions described by Dr. Bellew in his opinion appear to be an anomaly related to a medication reaction, the

---

[3] Although Plaintiff referenced psoriatic arthritis in her testimony, Plaintiff's arguments repeatedly focus not on her joint arthritis as the source of her disability, but rather the psoriatic lesions on her skin.  (*See* OBr. at 16/1-16, 17/12-16, 19/4-12, 23/14-20; RBr. at 5/1-5.)

1

> undersigned does not find this opinion regarding an inability to work
> or need for absences entitled to more than limited weight.

2

(*Id.*)

3

Dr. Bellew opined in **May 2016** that, due to her skin conditions Plaintiff:

4

> could sit for one hour in an eight-hour day, stand/walk six hours total
> in an eight-hour day, occasional crawl and climb, and frequently
> perform all other postural and manipulative activities. He further
> indicated that the claimant was moderately restricted from exposure
> to dusts, fumes, gases, marked changes in temperature or humidity,
> heat, cold, activities causing perspiration or skin chaffing, and totally
> restricted in working around adhesives or bandages, and her
> condition would cause her to be off-task 10 percent of the time
> (Exhibit 23F at 15-16).

5

6

7

8

9

(AR 1141.) (*See also* AR 1084-1085 (Exh. 23F at 15-16).)

10

The ALJ afforded only "partial weight" (*i.e.* "some weight to Dr. Bellew's

11

environmental restrictions, as these are reasonable to avoid exacerbating the claimant's

12

skin condition") (AR 1141) to Dr. Bellew's May 2016 opinion (functional limitations in

13

sitting, standing/walking, etc. and off-task 10 percent) for three reasons:

14

(1) Dr. Bellew is a dermatologist (*Id.*);

15

(2) he made no observations of exertional, postural or manipulation activities  and

16

no examinations of strength, range of motion or other clinical findings, but

17

instead "only documented skin lesions"  (*Id.*);

18

(3) his exam notes "contain no significant notations of pain behavior, complaints of

19

pain, or review of symptoms" (*Id.*);

20

(4) he made no assessments of cognitive functioning to support his off-task opinion

21

(*Id.*);

22

(5) his opinions appeared to be based on subjective complaints rather than objective

23

findings (*Id.*).

24

25

**2.  Applicable Standard for Evaluating Medical Opinions**

26

Because much of the disability determination involves evaluating opinions, and

27

often conflicting opinions, there is a well-developed body of law regarding the weight to

28

be given various opinions.[4]  "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).  "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

> An integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments—including the findings and opinions of other experts. The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.

*Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996).  *See also* 20 C.F.R. § 404.1527(c)(1) (examining provider) and (2) (treating provider) (applicable to pre-March 27, 2017 claims).

Under this rubric, "[t]he medical opinion of a claimant's treating physician is given '**controlling weight**' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

Thus, "[a]n ALJ may reject the uncontradicted medical opinion of a treating physician only for **'clear and convincing' reasons** supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202 (emphasis added).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear

---

[4] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017, and significantly altered the agency's methods for evaluating medical opinions (*i.e.* largely mandating only a comparison of the consistency and supportability of the various opinions).  In this case, because the claim was filed before March 27, 2017, the earlier regulation, 20 C.F.R. § 416.927, and the hierarchy of opinions developed thereunder, still applies. 82 Fed. Reg. at 5869; 20 C.F.R. § 416.927.

and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996).

Even where such clear and convincing reasons exist, the treating provider's opinion must still be considered. "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Trevizo*, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

Even where contradicted, a treating provider's opinion is still entitled to great deference:

> Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "**specific and legitimate reasons**" supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citations omitted) (emphasis added).

The Commissioner argues that the ALJ "may not give controlling weight to a treating physician's medical opinion unless it is well-supported and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)." (ABr. at 4.) (*See also id.* at 5 (citing 20 C.F.R. § 404.1527(c)(3), 8 (citing 20 C.F.R. § 404.1527(c)(3)-(4) (referencing supportability and consistency standards).) However, the Commissioner cites no controlling case law finding these factors mandatory, and none of the cited sections mandate consistency and supportability, but simply indicate that they are factors the agency considers "in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(c).[5] At most, the regulations *require* controlling weight be given when the opinion is "well-supported" and "not inconsistent," 20 C.F.R. § 404.1527(c)(2), and

---

[5] Indeed, even the new standards for post March 27, 2017 claims (unlike Plaintiff's) does not mandate consistency or supportability, but only indicates that these are "the most important factors" and requires the agency to "explain how we considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(c)(1)-(2) and (b)(2).

require at least consideration of supportability and consistency, 20 C.F.R. § 404.1527(c) and (c)(3)-(4). *See e.g. Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (inconsistency alone not sufficient to deny controlling weight to treating opinion where ALJ "did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion").

### 3.  Application of Law

#### a.   Scope of Claim on Appeal

Plaintiff makes no argument that Dr. Bellew's RFC opinions were uncontradicted (and thus rejectable only for "clear and convincing reasons), but rather asserts the ALJ's purported reasons were not even "specific and legitimate," or were not supported by substantial evidence. (OBr. 14.)  Indeed, Dr. Bellew's RFC opinions were contradicted by the other examining and consulting providers, calling for application of the "specific and legitimate" standard.

In addition, Plaintiff does not challenge the ALJ's handling of Dr. Bellew's February 2016 opinion ("unable to attend work on a regular basis"), acceding that while consistent with Dr. Bellew's May 2016 opinion "it did not provide specific functional limitations or quantify required absences due to Rodriguez's condition, and Rodriguez does not rely on it for the purpose of this appeal."  (OBr. 14, n. 5.)

#### b.   Specification of Rejected Portions of Opinion

Plaintiff argues the ALJ erred because she "failed to explain what portions" of Bellew's opinion were being rejected. (OBr. 15.)  To the contrary, reading the decision as whole, it is reasonable to infer that the ALJ limited her reliance on Dr. Bellew's opinions to giving "only some weight to Dr. Bellew's environmental restrictions, as these are reasonable to avoid exacerbating the claimant's skin condition" (AR 1141), and otherwise rejecting Dr. Bellew's RFC opinions.  The balance of the May 2016 opinion (including

the exertional, postural and manipulation limitations) were clearly not part of the ALJ's adopted RFC.  Moreover, a reasonable inference from the ALJ's reasons for the weighting of Bellew's opinion demonstrated she was rejecting the exertional/postural/manipulation opinions ("no observation of the claimant's abilities to perform exertional, postural, or manipulation activities… no evidence that he performed any complete physical exams assessing strength, range of motion, or other clinical findings" (AR 1141)).  And her reasoning indicated she was rejecting Bellew's off-task opinion ("no significant notations of pain behavior, complaints of pain, or review of symptoms [or] records assessing the claimant's cognitive functioning to rely on to opine that she would be off task ten percent" (AR 1141)).

Several of the other distinctions between the ALJ's RFC and Bellew's RFC were the ALJ's adoption of greater restrictions as proposed by other providers, *i.e.* no ladders, ropes, or scaffolds (Bellew allowed occasional climbing); no crawling (Bellew allowed occasional crawling).  Plaintiff cannot show the ALJ's adoption of greater restrictions in these errors without explanation was harmful.

The ALJ altered the terminology from Bellew's environmental restrictions, and framed them as limited to "frequent" exposure, while Bellew described Plaintiff as "moderately restricted."  And the ALJ did not adopt Bellew's opinion that Plaintiff was "totally restricted in working around adhesives or bandages."  But Plaintiff offers nothing to show that these deviations were harmful to the disability determination, e.g. that being limited to "frequent exposure" was significantly different from being "moderately restricted,"  or that a restriction from adhesives or bandages would have altered the disability determination.

Plaintiff shows no reversible error on this issue.

### c.  Specialty

Plaintiff asserts that the ALJ erred in relying on Dr. Bellew's specialty as a dermatologist, asserting that her  dermatological conditions asserted by Dr. Bellew were

disabling.  (OBr. 15.)

The specialization of a treating physician is a legitimate consideration in deciding whether to accept their non-controlling opinion. *Trevizo*, 871 F.3d at 675: 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

Plaintiff  asserts the ALJ "misunderst[ood]…Rodriguez's main impairment." (OBr. 16.) She argues, in essence, that  the primary disabling condition was dermatological, and the dermatological impacts described by Bellew were sufficient to preclude employment, and because this was all within Dr. Bellew's specialty the ALJ should not have relied on his specialty to reject his opinion.

 However, the ALJ rejected Dr. Bellew's findings of disability based on the dermatological condition as unsupported by the dermatological record: "show only one occasion when the claimant was noted to have lesions covering 60% of her body, and this was associated with starting a new medication"; "notes pre-date the alleged closed period and occurred when the claimant was working"; "no significant notations of pain behavior, complaints of pain, or review of symptoms."  (AR 1141.)

If the lesions were Plaintiff's only severe impairment, discussion of other things like "abilities to perform exertional, postural, or manipulation activities" or "cognitive functioning" (AR 1141) would have been unnecessary, as would the reference to Dr. Bellew's specialty.  But the ALJ had also found severe impairments from a laundry list of other conditions: "myalgia and myositis, dysesthesias, bilateral carpal tunnel syndrome, cervical degenerative disc disease, spondylosis."[6]  (AR 1129.)

---

[6] In her original hearing, Plaintiff had testified that her inability work resulted from other conditions:

> Q Okay. Ms. Rodriguez, why did you stop working?
> A I could no longer stand or clean. I had to do those at both places -- or all three places.
> * * *
> Q Okay, and why were you unable to stand or clean?

Plaintiff points to nothing to show that these conditions were within Dr. Bellew's specialty as a dermatologist.  The ALJ was obliged to consider these other conditions in forming her RFC, 20 C.F.R. § 404.1545(a)(2), and it was reasonable for her to recognize that they were outside Dr. Bellew's specialty.

Similarly, although the ALJ determined they were not severe, he also had concluded that Plaintiff had the "medically determinable mental impairments of depression and anxiety."  The ALJ was obliged to consider these non-severe mental impairments in determining the RFC.  *Buck v. Berryhill*, 869 F.3d 1040, 1047-1048 (9th Cir. 2017). Plaintiff does not show that Bellew's specialty encompassed these conditions. Plaintiff shows no reversible error on this issue.

### d.   Lack of Additional Assessments

For the same reason, the Court must reject Plaintiff's argument that the ALJ erred in relying on Dr. Bellew's failure to assess strength, range of motion or pain behavior. (OBr. 16.)  Having concluded Dr. Bellew's dermatological opinions were unsupported, the ALJ appropriately considered whether Dr. Bellew had conducted other examinations or evaluations regarding Plaintiff's other impairments that could have supported his opinions.  Plaintiff shows no reversible error on this issue.

//

//

---

A Having the Arthritis that I have, it affects my back and my legs. My back causes me to have severe pain in my legs when I stand for long times. And I can't clean because my hands are broke out really bad, severely from it…

(AR 50.)

Q All right. With the Arthritis and the Carpel Tunnel, do you have difficulty lifting things?
A I do.
                    * * *
Q Now, because of the Carpel Tunnel do you have difficulty gripping and grasping things?
A I do. My hands will just drop things when I'm picking them up. They'll just release --

(AR 65.)

- 12 -

### e.   Absence of Notes on Pain

Plaintiff argues that the ALJ erred in relying on her lack of "acute distress" at her appointments to reject Dr. Bellew's opinion.  (OBr. 16-17.)   Indeed, where a condition is chronic and only periodically acute, and/or part of the claimed limitation flows from the need to restrict activity to avoid acute symptoms, findings by providers of a lack of acute distress may not be a legitimate reason to reject symptoms testimony.  *See e.g. Childress v. Colvin*, 2014 WL 4629593, at *13 (N.D. Cal. Sept. 16, 2014) ("the ALJ's discrediting of Plaintiff's pain testimony because she was not observed to be in 'acute distress' ignores that certain illnesses are not marked by 'acute distress'"); *Quiroz v. Comm'r of Soc. Sec. Admin.*, 2017 WL 4250607, at *3 (D. Ariz. Sept. 26, 2017) ("Absent a more thorough explanation, the lack of evidence of acute distress is not a clear and convincing reason for discounting the credibility of the Plaintiff's symptom testimony.").

But, the ALJ did not rely on a lack of findings of acute distress in rejecting Bellew's opinions.  (AR 1141.)   At most, the ALJ noted that Dr. Bellew's "notes contain no significant notations of pain behavior, complaints of pain."[7]

Dr. Bellew described no exertional or other similar limitations which would preclude work. And given his apparent reliance on a particular incident of dermatological lesions, it was not unreasonable to infer that Dr. Bellew was relating the functional limitations at least in part to pain. Indeed, Plaintiff related her inability to work to pain from the psoriasis.

> Q What impairments do you have that you feel keep you from working?
> A I have a -- I have an autoimmune disease. It's psoriatic arthritis. And I get lesions all over my body and a lot of them are on my hands, just from doing regular work as far as just doing home -- like dishes.
> * * *
> A  I was unable to work. Just a lotta pain. My skin breaks out. Hard to walk 'cause you get lesions on your feet. Stuff like that.

---

[7] The ALJ did observe that Dr. Manek and Dr. Lloyd had noted Plaintiff had "no acute distress."  (AR 1139.)   Plaintiff does not challenge these findings.  Moreover, they occurred in evaluating Plaintiff's symptoms testimony, not Dr. Bellew's opinion.

(AR 1161-62.)

Thus, the absence of any record of any findings by Dr. Bellew of pain (acute, chronic, or otherwise), including any complaints of pain, was a specific and legitimate consideration in rejecting his disability opinion.

Plaintiff shows no reversible error on this issue.

### f.    Absence of Cognitive Function Notes

Plaintiff contends the ALJ erred by relying on Dr. Bellew's lack of testing of cognitive function to support his "off-task" opinion. (OBr. 17.)   Again, however, the ALJ had found unsupported Dr. Bellew's opinion on the psoriatic lesions, but still had to evaluate the effect of other impairments, including mental impairments.   Consequently, the ALJ properly considered whether  there were other examinations or evaluations in Dr. Bellew's records (including cognitive function exams) to support his off-task opinion.

Plaintiff shows no reversible error on this issue.

### g.    Reliance on Subjective Complaints

Plaintiff contends the ALJ erred by relying on a conclusion that Dr. Bellew's opinion was founded upon Plaintiff's subjective complaints of pain, asserting this finding "implies that Dr. Bellew, as one of Rodriguez's treating specialists, abandoned his professional judgment and just swallowed Rodriguez's reported symptoms whole, without question."  (OBr. 17-18.)

Plaintiff references *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1996).  There the Court quoted *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993) for the proposition that ""The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."  81 F.3d at 832.   But in those cases, the opinions were being rejected under very different circumstances.  In *Ratto*, the ALJ had discounted the opinion on the basis that it was "clearly obtained by the claimant's attorney for the purpose of litigation."  *Id.*  In *Lester*, the ALJ rejected the opinions based in part on the "unsupported

1    and unwarranted speculation that the other doctors were misrepresenting the claimant's

2    condition or were not qualified to evaluate it." *Id.*

3        In contrast, here, the ALJ rejected the opinions not based on some unsupported

4    suspicion of bias or incompetence, but based on the ALJ's findings that Dr. Bellew's

5    records, dermatological or otherwise, did not offer support for a finding of a continuing

6    inability to perform work.   Then, rather than assuming some misconduct or ineptitude, the

7    ALJ opined that Bellew's opinion "appears based on the claimant's subjective complaints,

8    rather than any objective findings." (AR 1141).  The lack of objective support is not only

9    not an improper consideration, it is effectively mandated by the regulations.  *See* 20 C.F.R.

10   § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a

11   medical opinion, particularly medical signs and laboratory findings, the more weight we

12   will give that medical opinion.").   To be sure, subjective complaints can be a proper

13   diagnostic tool, but sole reliance on them is a valid reason to give less weight to an opinion.

14   *See Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (rejecting consulting opinion

15   based solely on subjective complaints).  Indeed, a claimant's "statements about [his or her]

16   pain or other symptoms will not alone establish" an entitlement to benefits.  20 C.F.R. §

17   404.1529(a).

18       Moreover, as discussed hereinafter, the ALJ had properly discounted the claimant's

19   subjective complaints. (AR 1137-1140.)  "[D]isregard[ing a treating physician's] opinion

20   because it was premised on [the claimant's] own subjective complaints, which the ALJ

21   has already properly discounted…constitutes a specific, legitimate reason for rejecting the

22   opinion of a treating physician."  *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989),

23   *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  "Because the present record

24   supports the ALJ in discounting [the claimant's] credibility…he was free to disregard [the

25   examining physician's] opinion, which was premised on her subjective complaints."

26   *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

27       Plaintiff seems to argue that the credibility of the subjective complaints is relevant

28   only if the physician had reason for disbelieving the complaints.   (OBr. 18 (citing

- 15 -

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999).) However, in *Regennitter,* the ALJ's reasons for rejecting the claimant's subjective complaints were found to be "not supported by substantial evidence in the record." 166 F.3d at 1296. Moreover, the Ninth Circuit found the conclusion of reliance on subjective complaints (i.e. taking them "at face value") was "contrary to the evidence," and that there was no finding by the physicians the claimant was "malingering or deceptive," and thus they could not "be faulted for believing [the claimant's] complaints." *Id.* at 1300. *See also Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (improper to reject treating physician opinion as based on subjective complaints improper where ALJ gave no proper basis to reject credibility of claimant, and especially because diagnosis was chronic fatigue syndrome, which is by definition self-reported). *Regennitter* cannot be read as creating the illogical requirement that physicians be aware of the incredibility of subjective complaints before their opinions based (and particularly based solely) on those complaints could be rejected. Under such a rule, an ALJ faced with irrefutable evidence to the contrary, would be forced to accept an opinion of incapacitation that was based solely on subjective complaints.

In contrast to *Regennitter* and *Reddick*, here the ALJ had sufficient reasons to reject Plaintiff's symptoms testimony, and the ALJ properly concluded Bellew's opinion was not based on objective findings, but subjective complaints.

Plaintiff argues that the ALJ ignored that Plaintiff's skin lesions themselves provided objective support for Bellew's opinions. (RBr. at 5.)    But the ALJ found that Dr. Bellew's observations during the relevant period consisted of a single exam (all others occurring while Plaintiff continued to be employed), with symptoms heightened by a medication reaction. (AR 1141.)    Plaintiff fails to explain how a single exam revealing lesions was sufficient to support Dr. Bellew's sweeping disability opinion, unless Bellew relied on subjective complaints from Plaintiff about her condition at other times during the disability period. Moreover, the ALJ observed that Bellew's notes made no other objective findings to support acceptance of Plaintiffs' subjective complaints, *i.e.* "no significant

notations of pain behavior, complaints of pain."  (AR 1141.)

Plaintiff shows no reversible error on this issue.


### h.    Misreliance on Other Non-Dermatological Opinions

Finally, Plaintiff argues the ALJ erred by assigning more weight to the reviewing and examining physicians' opinions because the ALJ "cherry-picked portions" of the other opinions, and failed to show how they were inconsistent with Bellew's dermatologically based opinions.  "The nonexamining reviewers' and one-time examiner's opinions did not consider the impact of chronic skin lesions on Rodriguez's pain experience and related mobility limitations."[8]  (OBr. 18-19.)

As above, the ALJ's rejection of Dr. Bellew's dermatological opinion as unsupported rendered it largely irrelevant whether the other physician's addressed the dermatology issues.  Moreover, as above, the consideration of other findings such as gait, neurological deficits, strength, etc. were relevant to evaluating Petitioner's other impairments.   The ALJ's reliance on these other findings was not "cherry-picking" but a proper consideration of all of Petitioner's impairments.

Plaintiff shows no reversible error on this issue.


### 4.  Conclusion re Opinions

Based on the foregoing, the undersigned concludes that Plaintiff has failed to show that the ALJ's handling of Dr. Bellew's opinion was legally erroneous or unsupported by substantial evidence.

/ /

---

[8] By Plaintiff's own account, the examining physician, Dr. Cano, noted that "[t]opical steroid ointments were minimally effective for her psoriatic lesions", but observed only "psoriatic lesions at her bilateral hands and left ankle."  (OBr. at 9 (citing AR 903, 906.) This is markedly different from Dr. Bellew's single instance of 60% coverage in lesions, and Plaintiff fails to explain how such limited lesions would support a conclusion of disability. The reviewing physicians observed the dermatological issues in their record summaries, but simply found no evidence of resulting disability.  (AR 99-102 (Exh. 4A) (February 2015, Dr. Disney); AR 118-20 (Exh. 6A) (July 2015, Dr. Schenk).)

## D. SYMPTOMS TESTIMONY

### 1. ALJ's Decision

The ALJ summarized Plaintiff's symptoms testimony in the administrative proceedings:

> The claimant alleged disability due to psoriatic arthritis, migraines, back pain, leg pain, joint pain, skin pain, diabetes, fatigue, depression, and anxiety. In November 2014, the claimant reported difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, using her hands, memory, and concentration (Exhibit 11E). At the hearing, the claimant testified that, during the alleged period of disability, she was unable to work due to hand lesions, pain, skin break outs, difficulty walking, and foot lesions.

(AR 1137.)  Applying the two-step process, the ALJ concluded:

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.*)   In doing so, the ALJ relied on: (1) improvement; (2) activities of daily-living; (3) limited or normal clinical findings; (4) gaps in medical care due to lack of insurance; (5) effective treatment; and (6) medical recommendations for increased activity. (AR 1138-1140.)

### 2. Applicable Standard for Evaluating Symptoms Testimony

Absent evidence of malingering, once an ALJ finds that an impairment could cause the reported symptoms, the ALJ can reject a claimant's symptoms testimony only by providing specific, clear and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  Relevant evidence includes such things as "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical

evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

The Commissioner argues in a footnote that the Ninth Circuit's standard requiring "clear and convincing reasons" is contrary to the regulations.  (ABr. at 10, n. 3.)  But the Commissioner also acknowledges the Ninth Circuit's standard is binding in this Court and argues that the ALJ's reasons meet it.  (*Id.*)

**3.  Parties' Arguments**

Plaintiff argues the ALJ erred by: (1) failing to connect any inconsistencies with the medical record with specific symptoms testimony; (2) failure to explain how normal exam findings were inconsistent with testimony of chronic pain; (3) reliance on normal exam findings unrelated to the disabling dermatological condition; (4) reliance on gaps in medical care; (5) relying on limited treatment; (6) relying on the ALJ's own medical assessments; (7) relying on improvements on no-disabling impairments; (8) relying on temporary improvement; and (9) reliance on activities of daily living without showing relevant intensity, frequency, or duration.  (OBr. at 14-24.)

**4.  Application to Plaintiff's Testimony**

**a.    Connection between Testimony and Medical Record**

The ALJ opined that Plaintiff's symptoms testimony was inconsistent ("not entirely consistent") with the medical record.  (AR 1137.)  *See Smartt v. Kijakazi*, 53 F.4th 489, 499 n. 2 (9th Cir. 2022) (construing "not entirely consistent" as "inconsistent").

The courts have recognized that pain is inherently subjective, is (in the current state of medical science) all but impossible to measure, and is difficult to verbalize.  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  But that does not mean that medical records are irrelevant to symptoms testimony.   But it does mean that precision is imperative when reviewing an ALJ's decision comparing symptoms testimony with the medical evidence, because a lack of corroboration is different from contradiction, and objective medical evidence is different from other types of evidence from the medical record (e.g. subjective

1    reports, etc.).  This is born out in the law.

2        "**Contradiction** with the medical record is a sufficient basis for rejecting the

3    claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

4    1161 (9th Cir. 2008) (emphasis added).

5        A lack of **corroboration**, however, is more nuanced, depending on the type of

6    corroboration being sought.  Because pain is subjective and largely immeasurable, an ALJ

7    "may not reject a claimant's subjective complaints based *solely* on a lack of *objective*

8    medical evidence to fully *corroborate* the claimant's allegations." *Bray v. Comm'r of Soc.*

9    *Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009) (emphasis added). Although it is a

10   relevant factor, the ALJ is not permitted to base her opinion solely on the lack of such

11   evidence. *Rollins v. Massanri,* 261 F.3d 853, 857 (9th Cir. 2001).  *See also Robbins v. Soc.*

12   *Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

13       On the other hand, a lack of *any* corroboration in the balance of the medical record

14   (subjective complaints, treatment, etc.) is not only relevant, but in an appropriate case can

15   be the sole basis for rejecting symptoms testimony.  *See Smolen v. Chater*, 80 F.3d 1273

16   (9th Cir. 1996) (differentiating between corroboration at the first stage (not required

17   because evidence of actual level of symptoms not required, just possibility of level) and at

18   the second stage (under facts of case (limited record) lack of corroboration not found to be

19   clear and convincing reason)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)

20   (consideration of records on lack of treatment).

21       Plaintiff argues the ALJ failed to draw a connection between the medical evidence

22   and her symptoms testimony.  (OBr at 21.)  Indeed, to reject symptoms testimony as not

23   credible, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony

24   is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*,

25   81 F.3d 821, 834 (9th Cir.1995). "To support a lack of credibility finding, the ALJ was

26   required to point to specific facts in the record." *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th

27   Cir.2009) (emphasis added) (internal quotation marks omitted).

28       Here the ALJ provided adequate connection.  In a continuous passage, the ALJ

clarified that Plaintiff's assertions of disability was focused on her psoriasis lesions (AR 1137), made a summary finding of inconsistency, and then set about identifying a series of medical findings of limited lesions, inconsistent activities, etc. that refuted the assertion of persistent disabling lesions, including:

- "after the alleged period of disability, she lost insurance, but her lesions improved despite a lack of medical treatment;"

- "skin lesions scattered over her body" but "no 'impressive' skin lesions with multiple excoriated lesions";

- "she had a psoriatic lesion only on her right hand;"

- "complained only of a two-week history of rash…when her rash was on both hands and both legs…[but on exam] she also had normal skin apart from redness and bleeding on her right hand;"

- "had not seen rheumatology or dermatology in a year, and her condition was treated only with over-the-counter Ibuprofen and Norco prescribed by her primary care provider;"

- "denied any significant impact on her activities of daily living, and she could prepare meals, perform her hygiene activities, perform light housework, ambulate without difficulty or assistance, get adequate sleep, and drive;"

- "a normal gait, an ability to stoop without difficulty, an ability to stand on either foot alone;"

- "some psoriatic lesions on the dorsal portions of her hands without any wounds or ulcerations;"

- "complained of worsened psoriasis [but] had a scaly plaque only on her ankles, knees, and elbows, with a normal visual overview of all four extremities;"

- "psoriatic plaques to her elbows and knees, but normal extremities to inspection;"

- "claimant then had psoriatic patches on her arms, wrists, elbows, and left ankle…but she could heel walk and toe walk without difficulty;"

- "on August 17, 2015…plaques over more than 60% of her body at that time on exam, related to this change in medication…On September 11, 2015…plaque psoriasis on her extremities especially the elbows;'"

- "psoriatic plaques to her elbows and knees… normal visual overview of all four extremities;"

- "no rashes over her exposed areas;"

- "skin was improved due to the cooler weather;"

- "her psoriatic plaques to her hands and ankles had improved, and she had normal extremities to visual overview;"

- "denied any…foot ulcers…or slow healing wounds/sores;"

- "normal extremities to visual overview…with no noted rashes."  (AR 1138-1140.)

This focus on the lack of evidence of consistent, debilitating lesions was central to the ALJ's determination that "that the claimant's statements about the intensity, persistence, and limiting effects of the alleged symptoms, [were] inconsistent" with her "treatment-seeking history, diagnostic test results, clinical signs, reported symptoms, medications and other prescribed treatment." (AR 1137.)  It was also central to the medical opinion given "great weight," the examining opinion of Dr. Cano that Plaintiff "did not have a condition that would impose any limitations for twelve continuous months."  (AR 1140.)

Plaintiff relies on *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).  There, the Ninth Circuit observed: "Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts." But there the ALJ's reasoning was rejected where "the ALJ stated only—in passing and in a different section than the credibility determination—that Claimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing." *Id.*

Here, it is true the ALJ did not engage in repetitive "B shows A" argument, and

interspersed recitations of other findings as part of her chronologically organized review of the medical record, relevant to Plaintiff's other impairments but perhaps not to her psoriatic lesions. But, the Court is not constrained solely by the ALJ's organization of his opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the paragraph discussing [one provider's] findings and opinion, and draw inferences relevant to [another provider's] findings and opinion, if those inferences are there to be drawn." ). Here, the plain import was that the records review provided was evidentiary support for the preceding proposition of inconsistency with Plaintiff's assertions of inability to work "due to hand lesions, pain, skin break outs, difficulty walking, and foot lesions." (AR 1137.) This was sufficient to identify the ALJ's reasoning and support.

Plaintiff shows no reversible error on this issue.

**b.   Normal Exam Findings**

Plaintiff argues the ALJ erroneously relied on various normal findings, and points instead to "observations of skin lesions at multiple locations…and swelling at Rodriguez's joints." (OBr. 21.) As discussed hereinabove, however, lesions were only the prime rationale for disability. But, the other "normal" findings had to be addressed as part of consideration of the other impairments. For example, Plaintiff proffers nothing to show that the "normal" findings relied on by the ALJ were not contraindicative of reduce functional capacity from Plaintiff's other impairments, including "myalgia and myositis, dysesthesias, bilateral carpal tunnel syndrome, cervical degenerative disc disease, spondylosis." (AR 1129.)

Moreover, at least some of the "normal" findings cited by the ALJ were contraindicative of her alleged symptoms, e.g. a normal gait was inconsistent with Plaintiff's assertions that she suffered debilitating pain when walking from lesions on her feet. *See e.g. Guinn v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01822-PHX-DWL, 2023

WL 2495360, at *13 (D. Ariz. Mar. 14, 2023) ("examinations revealing normal gait and station, strength, and sensation, which were inconsistent with Plaintiff's claims regarding his pain, his inability to bend and squat").   In the ALJ's terms, Plaintiff failed to show a "pain behavior" (AR 11141) that would support her claimed symptoms.

Plaintiff shows no reversible error on this issue.

### c.   Gaps, Limited Treatment and Compliance

Plaintiff argues that the ALJ erred by relying on gaps in medical care and intermittent use of pain medications.  Plaintiff asserts this was not a clear and convincing reason because Plaintiff reported the pain medications were not very effective, and received other treatments, including medication trials and injection.  (OBr. 22.)

Regarding **gaps in medical care**, the ALJ observed:

-   On April 18, 2014 Plaintiff reported to Dr. Cano in "she had not seen rheumatology or dermatology in a year" and was being treated only by her primary care provider" (AR 1138);

-   On September 11, 2015 Dr. Manek noted Plaintiff "had big gaps in her medical care due to lack of insurance" (AR 1139);[9] and

-   Plaintiff "testified that, after the alleged period of disability, she lost insurance, but her lesions improved despite a lack of medical treatment" (AR 1137).

Gaps in treatment can be a proper reason to reject symptoms testimony.

> Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.
>
> * * *
>
> [However, a claimant's] failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding. We have held that an unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse

---

[9] Dr. Manek cited the gaps in treatment as a possible explanation for Plaintiff being a poor historian and in particular being unable to recall her dosage of methotrexate (a drug used to treat, *inter alia*, psoriasis).  (AR 1092, Exh. 24F at 7.)

credibility finding unless one of a number of good reasons for not doing so applies. But, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.

*Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (cleaned up).

Here, the ALJ properly noted that at one juncture Plaintiff's lack of treatment was the result of a lack of insurance. But Plaintiff does not posit, and the record does not show, that all of Plaintiff's gaps in treatment for her psoriasis lesions reflected in the record (either or before or after Dr. Manek's reference to insurance gaps) were the result of a lack of insurance, let alone a lack of funds.[10]

Moreover, the relevant point of the observation about the post-disability gap was that despite the lack of treatment, Plaintiff's condition had improved without treatment, which was indicative of its transience, a theme reflected in the ALJ's review of the record.

Regarding **pain medication**, the ALJ observed:

- Plaintiff reported to a provider "she was only taking Vicodin once and a while on December 30, 2013, when she had a psoriatic lesion only on her right hand" (AR 1138); and

- Plaintiff reported to Dr. Cano that for a year "her condition was treated only with over-the-counter Ibuprofen and Norco prescribed by her primary care provider" (AR 1138).[11]

As with gaps in treatment, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th

---

[10] At the hearing, Plaintiff attributed her assertion of a closed period of disability to a loss of insurance. Counsel clarified that the reason was improvement in her lesions despite the lack of treatment and that the lack of treatment occurred due to a lack of insurance. (AR 1162). Plaintiff proffered no other testimony on her health insurance status or finances during the disability period.

[11] It appears the Norco was not prescribed for pain from lesions, but for the psoriatic arthritis. (*See e.g.* AR 1027 (Exh. 16F at 1027) (attributing Norco to diagnosis of psoriatic arthritis).)

Cir. 2008).

To explain her failure to utilize pain medication, Plaintiff contends she reported pain medication was ineffective.  Indeed, Plaintiff did report ineffective pain treatment, but she did so in relation to impairments other than her psoriatic lesions.  On February 4, 2016, Plaintiff was seen by neurologist Aguila complaining of headaches and reporting "[s]he has been prescribed Norco for generalized pain in her body but this does not help so she does not take the medication."  This record makes no reference to the psoriatic lesions, and Dr. Aguila noted in the review of symptoms *complaints* of "[s]kin lesions, psoriasis," but did not include this in his diagnoses.  (AR 1521 (Exh. 25F at 3-4).)

On February 8, 2015, Plaintiff was seen by CNFP Ogden for "follow up of Diabetes, psoriatic *arthritis* and insomnia" (emphasis added).  In relation to the psoriatic arthritis, Plaintiff reported she "[h]ardly ever takes pain meds because they don't help her joints even a little.  Only helps a little with skin pain."  (AR 1678 (Exh. 28F at 16).)

On March 30, 2016 Plaintiff was examined by Dr. Lloyd complaining of neck pain and wrist joint pain, noting she "has tried Vicodin and Robaxin without significant benefit. (AR 1066 (Exh. 22F at 4).)

The only portion of these reports relevant to Plaintiff's lesion based disability testimony was the report to CFNP Ogden that the pain medications only helped "a little with skin pain."  But Plaintiff offers no explanation why, although complete relief for her pain from lesions was not afforded, she did not consistently utilize available pain medication in the face of purportedly debilitating pain.

Plaintiff also points to her medication trials, including injections in the lesions as evidence that she was actively seeking treatment.  (OBr. at 22.)  But Plaintiff offers nothing to show that these trials and injections were directed at reducing her purportedly debilitating pain, as opposed to simply reducing or eliminating the lesions themselves. Plaintiff does not suggest that the lesions themselves precluded employment, but rather that the pain from them did so. Nor does she suggest these treatments were mutually exclusive with pain medications.

Plaintiff also argues the ALJ erred in relying on Plaintiffs' providers recommendations for **<u>exercise</u>** because Plaintiff had informed the providers that her pain increased with activity, which was good cause for failing to comply. (OBr. 23.)

The ALJ observed:

- In November 2015, "Dr. Manek recommended exercise such as walking, riding a bike and Pilates" (AR 1139); and

- In December 2016, a "nurse examiner…instructed her to exercise for thirty minutes five days per week" (AR 1140).

Indeed, inability to comply with such instructions would presumably not be an appropriate credibility factor if compliance was not practicable under Plaintiff's circumstances. But, there is no indication that the ALJ relied upon any failure of Plaintiff to comply with these instructions to reject Plaintiff's subjective complaints. The ALJ did not observe whether or not Plaintiff complied, and a reasonable inference from the decision is that the ALJ found the recommendations themselves indicative of Plaintiff's capabilities.

Plaintiff shows no reversible error on these issues.

### d.  Playing Doctor

Plaintiff suggests the ALJ was relying on her own medical opinion in discrediting the symptoms testimony based on conservative treatment. (OBr. at 22.) It is true the ALJ cannot make his own independent medical findings, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006), or reject all the medical opinions and render wholesale a new medical opinion based on raw medical data, *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). However, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). And part of that responsibility is evaluating the credibility of the symptoms testimony, including by considering the claimant's treatment choices. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (permissible inference from

failure to treat that pain was not debilitating).

And here, Plaintiff offers nothing to show that the ALJ's reliance on Plaintiff's limited treatment was counter to a *medical* opinion (as opposed to a *disability* opinion).

Plaintiff shows no reversible error on this issue.

### e.  Effective Treatment of Other Conditions

Plaintiff argues that the ALJ improperly relied on the stabilization of her diabetes symptoms with medications and diet when psoriasis was the disabling impairment.  (OBr. at 23.)  However, as discussed above, the ALJ was required to consider all impairments, including diabetes, particularly after having concluded that the Plaintiff's assertions based on psoriatic lesions was inconsistent with the record.

Plaintiff shows no reversible error on this issue.

### f.  Recommendation of Exercise

Plaintiff argues the ALJ erred in relying on Plaintiffs' providers recommendations for additional exercise because Plaintiff had informed her providers that her pain increased with activity, which was good cause for failing to comply, citing *Byrnes v. Shalala*, 60 F.3d 639 (9th Cir. 1995). (OBr. 23.)

The ALJ observed:

-   In November 2015, "Dr. Manek recommended exercise such as walking, riding a bike and Pilates" (AR 1139 (citing Exh 24F at 5-6)); and

-   In December 2016, a "nurse examiner…instructed her to exercise for thirty minutes five days per week" (AR 1140 (citing Exh 28F at 55-56)).

The regulations provide: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work…If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled."  20 C.F.R. § 404.1530(a) and (b) (emphasis added).

In *Byrnes*, however, the Ninth Circuit declined to evaluate any purported

- 28 -

noncompliance, because the ALJ had not relied on non-compliance.

> Because the ALJ made no finding that "[Byrnes] was not complying with [his] prescribed treatment program[,] that [he] lacked good cause for failing so to comply," or that if he stopped smoking he could return to work, we "decline to review the record to ascertain whether substantial evidence might support these findings not made." *Rousey*, 771 F.2d at 1069; *Preston*, 769 F.2d at 990; *see generally Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir.1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

*Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995).

Similarly here, there is no indication that the ALJ relied upon any failure of Plaintiff to comply with these instructions to reject Plaintiff's subjective complaints. In fact, the ALJ made no finding whether Plaintiff had complied, or not. To the contrary, the ALJ simply noted the recommendation. The inference is that the ALJ was simply observing that the providers had concluded that Plaintiff was, despite her impairments, capable of doing the exercise, which ran counter to Plaintiff's assertions of persistent disabling pain.

Plaintiff shows no reversible error on this issue.

### g.   **Improvement**

Plaintiff argues the ALJ erred in relying on improvement at various points.  (OBr. 23.)

"Occasional symptom-free periods…are not inconsistent with disability," *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).

> As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  At the same time, however, the ALJ is directed to consider the "location, duration, frequency, and intensity" of the claimant's symptoms.  20 C.F.R. § 404.1529(c)(3)(ii).   The lesson of *Lester*, *Garrison*, and similar cases is that a holistic view of the claimant's record is required to identify

whether, considering the waxing and waning of symptoms, the claimant was ultimately rendered disabled. "The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (as cited in *Garrison*, 759 F.3d at 1017, n. 23).

Here, Plaintiff provides the following recitation of findings of lesions:

- November 2012 "knees, elbows, and buttocks" (OBr. 3);

- December 2012 "knees and elbows had improved but her thighs had not improved" (*id.*);

- May 2013 "all over body" (*id.*);

- June 2013 "hairline, axilla (armpits), finger webs, the back of her legs and knees, on her chest, and on her waistline" (*id.* 3-4);

- September 2013 "multiple…lesions on the body" (*id.* 4);

- December 2013 "lesion at her right hand" (*id.*);

- February 2014 "lesions on both hands, both legs" (*id.*);

- April 2014 "all over her hands and on her arms" (*id.*);

- August 2014 "legs" (*id.*);

- August 2014 "ankles, knees and elbows" (*id.*);

- November 2014 "elbows and knees" (*id.*);

- April 2015 "arms, elbows, wrists, and left ankle" (*id.* at 5);

- August 2015 "head, neck, back, chest, abdomen, buttocks, and bilateral upper and lower extremities" (*id.*);

- August 2015 "60% of her body surface area" (*id.*);

- September 2015 "head, neck, back, abdomen, and upper and lower bilateral extremities" (*id.*);

- September 2015 "arms…especially on the elbows…buttock" (*id.* at 5-6);

- September 2015 "head, neck, back, chest, abdomen, and bilateral upper and lower extremities" (*id.* at 6);

- October 2015 "elbows/knees…arms and legs" (*id.*);

1      -   October 2015 "head, back, abdomen, and bilateral lower and upper extremities"
2          (*id.*);

3      -   November 2015 "elbows/knees...arms and legs" (*id.*);

4      -   November 2015 "head, neck, back, abdomen, and bilateral upper and lower
5          extremities" (*id.* at 7);

6      -   December 2015 "head, back, chest, abdomen, and bilateral lower and upper
7          extremities" (*id.*);

8      -   March 2016 "head, neck, back, abdomen, and bilateral upper and lower
9          extremities" (*id.*);

10     -   April 2016 "head, neck, back, buttocks, and bilateral upper and lower
11         extremities" (*id.* at 8);

12     -   May 2016 "hands, legs, and buttocks" (*id.*);

13     -   June 2016 "bilateral upper and lower extremities, and buttocks" (*id.*);

14     -   August 2016 "bilateral upper extremities and buttocks" (*id.*);

15  In contrast, the ALJ called out improvement to Plaintiff's psoriatic lesions during only two
16  periods:

17     -   February 2016 "skin was improved due to the cooler weather" and "plaques to
18         her hands and ankles had improved" (AR 1140); and

19     -   "after the alleged period of disability...her lesions improved" (AR 1137).

20  The ALJ proffered no explanation why these two instances of improvement rendered
21  uncredible Petitioner's allegations of symptoms from lesions, particularly where: (a) the
22  first instance (February 2016) was surrounded by exams two months before and a month
23  after showing widespread lesions and came after years of reports of leisons, and the
24  improvement was attributed to cool weather, a short-lived and uncontrollable condition
25  (*see* AR 51-52 "autumn and spring...not as bad," summer and winter "worse"); and (b)
26  the other incident of improvement came after the end of the period of disability.

27          Thus, the undersigned finds that the ALJ simply cherry-picked two instances, of
28  improvement to rely upon, and ignored the evidence of persistent, if not consistent,

1    occurrence of lesions.

2          This was error.

3

4          **h.   Activities of Daily Living**

5          Plaintiff argues the ALJ erred by relying on her activities of daily living (ADLs) to

6    reject her complaints, without: (a) explaining how these activities were  inconsistent with

7    a particular portion of Plaintiff's symptom testimony; and (b) finding that a substantial

8    part of Plaintiff's day was spent in them. (OBr. 24.)

9          The Commissioner argues it was sufficient that the ALJ found the ADLs were

10   inconsistent with the degree of limited movement alleged by Plaintiff, and cited to

11   Plaintiff's denial of significant impact on her ADLs.   (ABr. 12.)

12         Plaintiff replies that the Commissioner fails to show the ALJ made sufficient

13   findings to support her conclusion.  (RBr. 7.)

14         "Engaging in daily activities that are incompatible with the severity of symptoms

15   alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d

16   1154, 1165 (9th Cir. 2014).  "[I]f a claimant is able to spend a substantial part of his day

17   engaged in pursuits involving the performance of physical functions that are transferable

18   to a work setting, a specific finding as to this fact may be sufficient to discredit an

19   allegation of disabling excess pain."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

20

21
22
23
24
25
26
27

> Recognizing that "disability claimants should not be penalized for
> attempting to lead normal lives in the face of their limitations," we
> have held that "[o]nly if [her] level of activity were inconsistent with
> [a claimant's] claimed limitations would these activities have any
> bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d at 722
> (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647
> (7th Cir.2012) ("The critical differences between activities of daily
> living and activities in a full-time job are that a person has more
> flexibility in scheduling the former than the latter, can get help from
> other persons ..., and is not held to a minimum standard of
> performance, as she would be by an employer. The failure to
> recognize these differences is a recurrent, and deplorable, feature of
> opinions by administrative law judges in social security disability
> cases." (citations omitted)).

28   *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  But, a claimant "does not need to

be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  Such activities are only relevant if they are "transferable to the work setting with regard to the impact of pain" and taking account of the ability to "concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id*.

Plaintiff asserts the standard is that the ADLs must be performed for a *substantial part of the day*, citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001), a phrase which finds it roots in *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  (OBr. at 24.)  But *Fair* did not adopt such a standard. To the contrary, *Fair* simply identified such an instance as an example of ADLs which "may be sufficient to discredit an allegation of disabling excess pain."  885 F.2d at 603.  But *Fair* also found that other types of ADLs can discredit symptoms testimony, giving the "extreme" example of a claimant who "runs marathons." *Id*.

The key is that to be a valid reason, ADLs must be "inconsistent with the alleged symptoms," and demonstrate capabilities that are "transferable to a work setting."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Here, the ALJ identified a laundry list of ADLs she found inconsistent with Plaintiff's complaints:

> she could brush her teeth, perform stretching activities, feed herself, use the toilet, prepare complete meals, wipe off counters, dust, drive and ride in a car, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money order, watch television, play cards, write in a journal, go for walks, spend time with others, go to movies, eat in restaurants, follow written instructions, and get along with authority figures.

(AR 1137.)

> She also denied any significant impact on her activities of daily living, and she could prepare meals, perform her hygiene activities, perform light housework, ambulate without difficulty or assistance, get adequate sleep, and drive.

(AR 1138.)

Plaintiff did not assert complete incapacity, and instead asserted her disability

stemmed from pain associated with her lesions.  The ALJ offered no explanation how any of the identified ADLs established capacities transferrable to the work setting.  She made no findings of the frequency or duration with which such activities were conducted.

In response to questioning, Plaintiff testified that she required assistance with activities such as brushing hair and dressing, and would lay down from walking (AR 54., 57), she could do laundry, but required her husband to carry it (AR 59), only cooked "for occasions once every week or every other week (AR 60), shopping was with assistance from her husband (AR 60-61), her pain rose from a five to nine with activity throughout the day (AR 62) and she spent three to four hours a day laying down, shopped holding onto a cart, and could only walk a block without holding on to something (AR 63).   The ALJ offered no explanation how such limited activities were transferrable to the work setting.

Moreover, the denial of impacts on ADLs cited by the ALJ was at the April 18, 2014 examination by Dr. Cano, the examining provider.  (*See* AR 1138 (citing Exh. 11F).)  At the time, Cano found no lesions.  (AR 904 (Exh. 11F at 2).)  Comparatively, Plaintiff was observed to have lesions on February 10, 2014 (AR 998), April 14, 2014 (AR 894), and August 26, 2014, indicating Cano's exam (and report of no restrictions in ADLs) occurred in a period in which the psoriasis was waning.

Under these circumstances, Plaintiff's ADLs were not a clear and convincing reason to reject Plaintiff's symptoms testimony.

**5.  Harmlessness**

 "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Molina*, 674 F.3d at 1115.  An error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination."  *Stout v. Comm'r, Soc.*

1    *Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Harmlessness does not require the court
2    to determine what ultimate decisions the ALJ would have made if the error had not been
3    committed, but only to ask whether the remaining bases for the decision are sufficient to
4    support the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th
5    Cir. 2008).

6         The undersigned has concluded that the ALJ relied on two reasons (improvement,
7    and Plaintiff's ADLs) that fail to meet the standard of specific, clear and convincing
8    reasons supported by substantial evidence to reject symptoms testimony.   Even so, the
9    remaining reasons offered by the ALJ (*i.e.* limited or normal clinical findings, gaps in
10   medical care, effective treatment, and medical recommendations for increased activity)
11   were sufficient to reject Plaintiff's physical symptoms testimony.   Accordingly, any error
12   was harmless and does not justify a reversal.

13

14   **E.  CONCLUSION**

15        **IT IS THEREFORE RECOMMENDED:**

16   (A)  The final decision of the Commissioner of Social Security be **AFFIRMED**.

17   (B)  The Clerk be directed to enter judgment accordingly.

18

19                          **EFFECT OF RECOMMENDATION**

20        This recommendation is not an order that is immediately appealable to the Ninth
21   Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*
22   *Appellate Procedure*, should not be filed until entry of the district court's judgment.

23        However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall
24   have fourteen (14) days from the date of service of a copy of this recommendation within
25   which to file specific written objections with the Court. Thereafter, the parties have
26   fourteen (14) days within which to file a response to the objections.  Failure to timely file
27   objections to any findings or recommendations of the Magistrate Judge will be considered
28   a waiver of a party's right to *de novo* consideration of the issues,  *see United States v.*

*Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: August 27, 2024

23-8567r RR 24 08 07 re SSA Appeal.docx

                                        James F. Metcalf
                                United States Magistrate Judge